UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

GARY O. CERNY and
BARBARA M. CERNY,

    Debtors.

Case Number: 24-10322-13

---

GARY O. CERNY and
BARBARA M. CERNY,

     Plaintiffs,

v.

OLD NATIONAL BANK,
JUDGE JEFFREY S. KUGLITSCH, and
ECKBERG LAMMERS, P.C.,

    Defendants.

Adversary Number: 24-00061

---

## DECISION ON DEFENDANTS' MOTIONS TO DISMISS

Gary and Barbara Cerny ("Plaintiffs" or "Cernys" or "Debtors") filed an adversary proceeding against their mortgage lender, Old National Bank ("Old National"), State Court Judge Jeffrey S. Kuglitsch, and the Eckberg Lammers, P.C., law firm (together, "Defendants"). The Cernys contend that Old National is not the owner of the note and mortgage, so therefore had no right to file a foreclosure action. They maintain that because the Eckberg Lammers law firm represented Old National in a state court foreclosure and Judge Kuglitsch granted a judgment, both acted in a manner that advanced what the Cernys call a fraud by Old National.

Each Defendant moved to dismiss the adversary proceeding. Plaintiffs objected to the motions and each Defendant replied.

The Court held a preliminary hearing on the motions on December 17, 2024. Plaintiffs were given the opportunity for further argument on the record, and the Court allowed Plaintiffs two weeks to submit citations to case law that allegedly supported their position. Plaintiffs submitted a supplemental letter. The Court took the motions under advisement on the papers submitted and arguments presented.

For the reasons below, the Court must grant the motions of the Defendants and dismiss the case.

## FACTS

Background

Plaintiffs Gary and Barbara Cerny live at 129 N. Crosby Street, Janesville, Wisconsin (the "Property"). There is no dispute that they bought the Property in August 2009 with a $116,000 loan that was evidenced by a note and mortgage. The note and mortgage identified AnchorBank, fsb, as the lender.

The note was endorsed in blank by AnchorBank, meaning that it was made payable "to order" and the endorsement was signed by a vice president of AnchorBank. In 2013, an assignment of mortgage was signed by officers of AnchorBank assigning the mortgage to Federal National Mortgage Association. That assignment was never recorded.

<u>State Court Proceedings and Prior Bankruptcy Proceedings</u>

The Cernys fell behind on payments. AnchorBank filed a foreclosure action. In June 2015, the Cernys entered into a loan modification agreement with AnchorBank to resolve a prior foreclosure action AnchorBank had filed. They agreed that the unpaid balance was $88,496.83.

The Cernys then filed a voluntary Chapter 7 bankruptcy in 2016.[1] They received a discharge in that case. The discharge included a discharge of personal liability on the mortgage and note, but that did not release or satisfy the mortgage.

In May 2016, AnchorBank merged with and into Old National Bank, which became the successor-by-merger.[2] The Comptroller of the Currency confirmed the merger of AnchorBank with and into Old National Bank effective May 1, 2016. The Cernys are aware of this confirmation as demonstrated by the inclusion of this letter as an attachment to their response to the motions to dismiss. Old National is the successor-by-merger to AnchorBank. So it is the secured party of record under the Cernys' mortgage.[3]

---

[1] Case no. 16-12198.

[2] *See* Main Case, No. 24-10322, Old National's Motion for Relief from Automatic Stay, ECF No. 25, Exh. A.

[3] Plaintiffs dispute this fact among others in this section. But this was a finding of fact made by Judge Kuglitsch in Rock County Case No. 22CV846.

In 2017, Old National filed a foreclosure action against the Property in Rock County Circuit Court. It received a judgment of foreclosure. But before a sheriff's sale was conducted, the Cernys filed a Chapter 13 bankruptcy in this Court, Case No. 17-14133, which was later dismissed.

Old National (and AnchorBank before it) have been in litigation with the Cernys over the mortgage and unpaid loan amounts since at least 2014. In 2018, the Cernys signed an agreement with Old National to reinstate the note and mortgage that were the subject of the foreclosure judgment. The agreement provided that the 2017 foreclosure judgment would be dismissed without prejudice. They agreed that to reinstate the mortgage and resolve the foreclosure action, $37,858.56 was required to be paid on or before July 13, 2018. Beginning in August of that year they were to make payments of $711.72 per month to address the remaining unpaid amounts.

The Cernys made payments under that agreement until October 2020 when they stopped making payments. They eventually made the October payment but defaulted again in November and haven't made a payment since. The Cernys now dispute anything is owed under the agreement or foreclosure judgment. Further, they argue that the total amount due under the note was paid in full. They insist that nothing is owed to Old National or that Old National is not the proper party to bring a foreclosure action.

Old National filed another foreclosure action in October 2022.[4] Old National moved for summary judgment in January 2023. Defendant Judge Jeffrey S. Kuglitsch presided over the matter and held an evidentiary hearing on Old National's motion in July 2023. Attorney Eric Sherburne of Defendant law firm Eckberg Lammers, P.C., appeared at the hearing representing Old National. Plaintiffs Mr. and Mrs. Cerny appeared pro se.

On July 27, 2023, Judge Kuglitsch issued an order granting Old National's summary judgment motion. In the order, Judge Kuglitsch made specific findings of fact and conclusions of law, including:

- Old National is the holder of, and entitled to enforce, the note against the Property.

- Old National is the successor-by-merger to AnchorBank, fsb, and is the secured party of record under the mortgage encumbering the Property and is entitled to enforce the mortgage.

- Plaintiffs were in default under the note and mortgage.

- The material allegations in Old National's complaint were proven true and correct.

- The mortgage foreclosure action, being equitable, means that there is no right to a trial by jury.

---

[4] Rock County Circuit Court Case No. 22CV846.

- As of July 18, 2023, the amounts owed under the note and secured by the mortgage totaled $113,395.91.[5]

- Old National was entitled to a judgment of foreclosure.[6]

Judge Kuglitsch's order clarified that it was the final judgment for purpose of appeal. The Cernys did not appeal it. The redemption period expired on January 23, 2024, and Old National scheduled a sheriff's sale for February 21. On the morning of the sheriff's sale, the Cernys filed their current Chapter 13 bankruptcy, Case No. 24-10322.

Current Bankruptcy Proceedings

Old National moved for relief from the automatic stay in April 2024. Debtors objected to the motion. It was subsequently settled with terms placed on the record on June 18, 2024.

The Cernys (acting pro se) filed this adversary proceeding on October 15 against Old National, Old National's state court counsel Eckberg Lammers, P.C., and Judge Kuglitsch. The Cernys list 14 causes of action, in part seeking declaratory judgments that the state court order granting Old National's summary judgment motion is null and void, and that Old National doesn't own the note and mortgage encumbering the Property. The Cernys contend that they signed a note, mortgage, and subsequent loan modification agreement

---

[5] The amounts set out in the state court order were detailed to include principal, interest, escrow, suspense balance, attorneys' fees and costs. *Cerny v. Old National Bank*, Adv. No. 24-61, ECF No. 21, DOC 6 EX B, p. 5 of 8.

[6] *See* Old National Bank's Motion to Dismiss, ECF No. 6, Exh. 2, Appendix at pp. 29 of 77.

with AnchorBank, fsb, not Old National. Thus, the Cernys argue that Old National had no right to foreclose. They also allege violations of due process, the United States Constitution, and the Uniform Commercial Code.

Each Defendant moved to dismiss the case. Each of the Defendants' motions argue that this Court lacks subject-matter jurisdiction to decide the issues presented in the Cernys' Complaint under the *Rooker-Feldman* doctrine. Each motion also argues that the Complaint fails to state a claim upon which relief can be granted. Eckberg Lammers and Old National argue that the Cernys lack standing to bring the claims in the Complaint since they arose pre-petition and thus belong to their bankruptcy estate. The motions also address the doctrines of claim and issue preclusion. And Judge Kuglitsch argues that he is immune from liability for his actions as a judge.

The Cernys object to the motions. They argue the state court foreclosure judgment is void because Old National didn't attach the original note to the complaint and that the loan modification is invalid. They allege that *Rooker-Feldman* doesn't apply, and that Judge Kuglitsch isn't immune because of unspecified fraud. Each Defendant replied in support.

**DISCUSSION**

I.    Improper Service on Judge Jeffrey S. Kuglitsch

Federal Rule of Bankruptcy Procedure 7004 governs the required method for service of an adversary proceeding. It incorporates Fed. R. Civ. P. 4(a), (b), (c)(1), (d)(5), (e)-(j), (l), and (m) in an adversary proceeding. To serve an individual within the judicial district, a copy of the summons and complaint

must be delivered to the individual personally by serving it on an adult residing at the person's dwelling, or by delivering it to an agent authorized by law to receive process for the person.

The proof of service[7] states that a process server delivered a copy of the preliminary pretrial order, summons, notice of pretrial conference, and complaint to Attorney Richard Greenlee as the Rock County Corporation Counsel. This delivery was intended to be service on Judge Kuglitsch. The affidavit of service says that he attempted service at the Rock County Courthouse by speaking to a receptionist for the judges. The affidavit says the receptionist took the papers to the Judge's assistant and then returned instructing that the receptionist "stated that since the papers are for Judge Kuglitsch in his official capacity as a Rock County Judge the papers should be served to Rock County Corporation Counsel."

Judge Kuglitsch's motion to dismiss identifies this error. But rather than require that the summons be reissued and the complaint be re-served, he has "accept[ed] service and respond[ed] to the substance of the Cernys' claims against him."[8]

II.   Jurisdiction

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 (the Bankruptcy Code or "Code") and "original but not exclusive jurisdiction" of all civil proceedings that arise under the Code, or that

---

[7] ECF No. 4 at 3.

[8] ECF No. 8, Exh. 1 at 4.

arise in or are related to cases under the Code. 28 U.S.C. § 1134(a), (b). The district courts may, however, refer such cases to the bankruptcy judges for their district. 28 U.S.C. § 157(a). In the Western District of Wisconsin, the district court has made such a reference. Western District of Wisconsin Administrative Order 161 (July 12, 1984).

Pursuant to this reference, this Court may hear and determine all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11. This jurisdiction is not without limits. Those limitations include the *Rooker-Feldman* doctrine, the Federal Rules of Civil Procedure, and claim preclusion as discussed below.

A. <u>The Bankruptcy Court Does Not Have Jurisdiction Over the Claims in the Complaint.</u>

i. <u>Section 28 U.S.C. § 1334 Limitations</u>

Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." And 28 U.S.C. § 1334 demarcates the parameters of federal bankruptcy jurisdiction. *Threshold Entm't, Inc. v. Midway Games Inc. (In re Midway Games, Inc.)*, 446 B.R. 148, 151 (Bankr. D. Del. 2011). "Bankruptcy court jurisdiction potentially extends to four types of title 11 matters: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *Id.* (quoting *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 162 (3d Cir. 2004)).

"[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514 (citation omitted); *see also Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999) ("Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure.").

The Cernys are proceeding pro se. So the pleadings are given a more liberal construction and less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even so, the pleadings are subject to dismissal if the court cannot reasonably read the pleadings to state a valid claim, and this Court may not rewrite a complaint to include claims not presented, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

The Cernys' objection to the motions to dismiss consists of what appears to be cutting and pasting paragraphs from unclear sources that seem to discuss—likely in a state court in most instances—a view about standing. The "quotes," for example, assert that *if* a foreclosure is brought by a party that has no title to the debt, then there is no jurisdiction. Taken out of context, this

10

might appear to the Cernys to be the answer, but it is not the end of or a complete analysis.

Because the Cernys believe that Old National doesn't hold the note, they conclude that there can be no judgment of foreclosure. Other arguments depend on the idea that the foreclosure judgment is void, and if a judgment is void, it is a nullity. This argument simply assumes that the state court judgment is void.

Next, because they believe there was an error in granting the foreclosure judgment, they conclude that constitutes a fraud. Then they advocate a conclusion that because there was a fraud *Rooker-Feldman* does not apply.

Each of these arguments appears to be based on a "mortgage analysis" by someone named Joseph Esquivel. He says he was hired by the Cernys to investigate and review documents related to the Janesville house. Mr. Esquivel represents he is a licensed private investigator in Texas. Other than his Texas PI license, there is no evidence of any qualifications to examine or reach any conclusions about the enforceability, ownership, status of a holder, or rights to enforce a note or mortgage. He is simply a self-proclaimed "expert" of some sort.

He apparently reviewed a few documents he received from some company called Housing Mortgage Consultants and a person he refers to as William McCaffrey of the company. He labels Mr. McCaffrey as an expert, although no credentials of that person have been presented, nor has his expertise been established.

11

Mr. Esquivel reviewed only limited items including the note, mortgage and pages 1-9 of something called "Prospectus Supplement FNMMA 2009-80." There is no evidence he reviewed the judgment that was entered in Rock County, the docket in that case confirming that the order and judgment were not appealed, the loan modification, or the agreement between the Cernys and Old National to reinstate the loan. Neither did he consider or examine any documents confirming the merger of AnchorBank into Old National. Finally, none of his conclusions take into consideration federal or state law that (1) limits the jurisdiction of this Court; (2) requires comity be given to final decisions of a state court; or, for example (3) the provisions of the Uniform Commercial Code adopted in Wisconsin that govern who is entitled to enforce a note. While the length of his opinions and use of technical terms may have persuaded the Cernys that the state court decision should not have been entered and that Old National has no right to proceed, he is wrong.

ii.  The *Rooker-Feldman* Doctrine

Despite the broad jurisdictional grant under 28 U.S.C. § 1334, lower federal courts have no jurisdiction to decide an appeal from a state court judgment. Under the *Rooker-Feldman* doctrine, lower federal courts may not sit in direct review of the decisions of a state tribunal. Lower federal courts are courts of original, not appellate, jurisdiction. *See, e.g., GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) ("district courts have only original jurisdiction; the full appellate jurisdiction over judgments of state courts in civil cases lies in the Supreme Court of the United States"); *Singleton v. Fifth*

*Third Bank (In re Singleton)*, 230 B.R. 533, 536 (B.A.P. 6th Cir. 1999) (*Rooker-Feldman* doctrine is a limitation on the subject-matter jurisdiction in federal courts, and the doctrine "expresses the principle that 'federal trial courts have only original subject matter, and not appellate, jurisdiction [and] . . . may not entertain appellate review of [or collateral attack on] a state court judgment.'") (citations omitted). Title 28, § 1257 grants jurisdiction to review a state court decision only in the U.S. Supreme Court.

In other words, a party who litigates in state court and is not happy with the decision needs to pursue appellate remedies available in the state court system. The unhappy litigant who loses in state court may not begin proceedings in federal court to attempt to upset the state court decision.

Later cases make clear that *Rooker-Feldman* applies even where the state court was wrong and even where there is a legitimate constitutional challenge to the actions taken by the state court. *See, e.g.*, *Knapper v. Bankers Trust Co. (In re Knapper)*, 407 F.3d 573 (3d Cir. 2005); *Holler v. Fairbanks Capital Corp. Serv. Ctr. (In re Holler)*, 342 B.R. 212 (Bankr. W.D. Pa. 2006).

*Rooker-Feldman* applies to claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Behr v. Campbell,* 8 F.4th 1206, 1210 (11th Cir. 2021) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

13

The Complaint here alleges causes of action related to a promissory note and mortgage dated August 7, 2009, from the Cernys to AnchorBank, fsb, and references lender's name, the note, mortgage, loan modification agreement, an Agreement between the Cernys and Old National Bank to reinstate the note and mortgage, and a foreclosure in the state court. It includes causes of action labeled: (1) Federal Violations, alleging deprivation of due process, a lack of standing to bring the foreclosure, and violations under 18 U.S.C. §§ 242 and 241; (2) Legal Error, alleging the Judge ignored evidence, was biased, and his legal rulings were erroneous; (3) Old National Bank did not actually loan money to the Cernys; (4) Violation of Due Process, alleging that the judgment resulted in violations of the Fifth, Seventh, and Fourteenth Amendments; and (5) that the state court action was a fraud on the court because, among other theories, there is no contract with the Bank so there is a UCC violation.

The Cernys complain that Old National Bank didn't own the note and mortgage, was merely a loan servicer, and so it was not entitled to a judgment of foreclosure. They lost in state court when the foreclosure judgment was entered and now ask this Court to reverse that judgment. In other words, the Cernys ask this Court to overturn the state court order that granted a judgment of foreclosure to Old National.

The *Rooker-Feldman* doctrine "does not prioritize form over substance. It bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else." *Behr*, 8 F.4th at 1211.

14

Although the Cernys do not frame their Complaint challenging Old National's claim as seeking review of the state court judgment, that is the essence of the Complaint. Under various theories, the Cernys say Old National has no rights under the note and mortgage on the Cernys' property, so the judgment rendered by the state court should be overturned. Because Defendant Eckberg Lammers, P.C., was the law firm that represented Old National in the foreclosure, the Cernys have named it as a defendant here arguing that the foreclosure is wrong as a "false claim" because Old National doesn't own the claim and thus the law firm is also subject to claims for an improper judgment of foreclosure. Because Judge Kuglitsch granted the judgment, he is also seen as subject to some claim.

The purpose of the Cernys' Complaint is to bring adverse claims against Defendants and challenge the state court judgment at the center of those adverse claims. Each of the theories listed in the Complaint are simply different ways to argue that Old National is not the owner of the note and mortgage and so was not entitled to foreclose. This is precisely the focus of *Rooker-Feldman*. This Court is not the proper place to challenge the state court judgment.

### iii.  Full Faith and Credit

Moreover, the Full Faith and Credit Act, 28 U.S.C. § 1738, compels a federal court to accord a state court judgment the same preclusive effect that it would be accorded by the rendering state court. *In re Keene*, 135 B.R. 162 (Bankr. S.D. Fla. 1991); MOORE'S FEDERAL PRACTICE 3d § 133.30[1] (3d ed. 2001). The Eleventh Circuit in *St. Laurent v. Ambrose (In re St. Laurent)*, 991

15

F.2d 672, 676 (11th Cir. 1993), has expressly stated that "[i]f the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *See also Lasky v. Itzler (In re Itzler)*, 247 B.R. 546, 548 (Bankr. S.D. Fla. 2000). The statute requires all federal courts to give preclusive effect to state court judgments whenever the courts of the state in which the judgments were rendered would do so. *Pelletier v. Zweifel*, 921 F.2d 1465, 1501 (11th Cir. 1991) (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).

Whether under *Rooker-Feldman* or principles of full faith and credit, claim preclusion, and/or collateral estoppel, the bankruptcy court must reject the Cernys' challenge to Old National's judgment and give effect to the state court judgment. *See Rohe v. Wells Fargo Bank, NA*, No. 21-10561, 2022 WL 17752372 (11th Cir. Dec. 19, 2022) (debtor's challenge to bank's claim was barred by claim preclusion based on state court foreclosure judgment); *In re Zoernack*, 289 B.R. 220 (Bankr. M.D. Fla. 2003).

III. <u>Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)</u>

The standard of review for motions to dismiss under Fed. R. Civ. P. 12(b)(6) is well established. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

16

for the misconduct alleged." *Id.* Finally, to survive a Rule 12(b)(6) motion, the factual allegations set forth in the complaint, taken as true, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The standard of review in the Seventh Circuit under Rule 12(b)(6) has been explained to contain three elements. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Those elements are: (1) notice to the defendant(s) of the claims; (2) that courts must accept factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice of the claims; and (3) in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

Additionally, when a plaintiff such as the Cernys alleges fraud, Fed. R. Bankr. P. 7009 and Fed. R. Civ. P. 9(b) require that a complaint "state with particularity the circumstances" constituting the fraud.

Even if the application of the *Rooker-Feldman* and claim preclusion doctrines did not warrant dismissal, the claims of fraud do not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The claim must contain sufficient factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The Cernys' Complaint fails to meet this standard.

The Cernys' allegations concerning the supposed defects in the assignment of the note and mortgage are beside the point. The Cernys

17

acknowledge that AnchorBank was merged into Old National. Further that AnchorBank endorsed the note in blank.

It has been accepted in Wisconsin for more than a century that: "[a] writing [is] not necessary to a valid assignment of the mortgage . . . . An interest in the debt might well be transferred . . . without a written assignment. The transfer of the debt carries the mortgage with it." *Franke v. Neisler*, 97 Wis. 364, 367, 72 N.W. 887, 888 (Wis. 1897). Indeed, "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Edwards v. Deutsche Bank Nat'l Trust Co. (In re Edwards)*, No. 11-2505, 2011 WL 6754073, at *7-8 (Bankr. E.D. Wis. Dec. 23, 2011) (quoting *Carpenter v. Longan*, 83 U.S. 271, 274 (1873)). "The debt is the principal thing, to which the security instrument is an incident thereof . . . . Under this view, long established in Wisconsin law, the Mortgage is equitably assigned when the Note is endorsed and negotiated to its current holder." *Edwards*, 2011 WL 6754073, at *7-8 (quoting *Tidioute Sav. Bank v. Libbey*, 101 Wis. 193, 77 N.W. 182, 183 (Wis. 1898)). Thus, barring a prima facie showing that Old National is not a holder of the note, the claim cannot survive a motion to dismiss. No such showing has been made. In fact, the state court made a specific finding that Old National is a successor-by-merger, the secured party, and entitled to enforce the note.[9]

---

[9] ECF No. 6, Exh. 2, Appendix at 30 of 77, ¶¶ 9 and 11.

The Debtors' argument about the transfer of the note fails for several reasons. In the Amended Complaint they allege that the note, which was endorsed in blank, was improperly transferred or was never actually transferred to Old National. They conclude that an endorsement in blank does not change who owns or holds the mortgage. This assertion lacks support. Under basic principles of contract law, Old National could receive the transfer and become the holder of the note.

The Cernys' assertion about the note appears to center on the belief, drawn entirely from an "analysis" prepared by a private investigator whose credentials are self-proclamations of expertise and whose conclusions are based on a minimal review of a few documents. His opinions were that the Cerny loan was listed in a FNMA Trust, that he could not trace the application of any payments the Cernys might have made, and that an endorsement in blank doesn't transfer the document. Finally, it appears he simply isn't sure who holds the note and mortgage.[10] Those opinions are without the benefit of a factual or legal basis. He concludes the endorsement in blank is not sufficient while ignoring both the merger of AnchorBank into Old National and the specific findings of the state court that Old National is the holder of the note, the secured party under the mortgage, and the party entitled to enforce it. These arguments, even accepted at face value, are unpersuasive. Speculation is insufficient to sustain a prima facie case of fraud. See *Bankers Trust Co. v. Old*

---

[10] ECF No. 35, Exh. 1 at 65-69.

*Republic Ins. Co.*, 959 F.2d 677, 681-83 (7th Cir. 1992); *Capital One Bank v.*

*Bungert (In re Bungert)*, 315 B.R. 735, 740 (Bankr. E.D. Wis. 2004).

Without any specific facts or legal explanation, the Cernys also allege

that the endorsement in blank or filing of a foreclosure by Old National must

be a violation of the Uniform Commercial Code ("UCC"). Although the argument

was not expanded, in the interest of completeness the Court will briefly address

the reasons it did not violate the UCC.

The note in this case is clearly a negotiable instrument under the

Wisconsin Uniform Commercial Code.[11] The note contains the Debtors' written

---

[11] Wis. Stat. § 403.104 provides:

(1) Except as provided in subs. (3) and (4), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if all of the following apply:

  (a) It is payable to bearer or to order at the time that it is issued or first comes into possession of a holder.

  (b) It is payable on demand or at a definite time.

  (c) It does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain any of the following:

   1. An undertaking or power to give, maintain or protect collateral to secure payment.

   2. An authorization or power to the holder to confess judgment or realize on or dispose of collateral.

   3. A waiver of the benefit of any law intended for the advantage or protection of an obligor.

promise to pay a fixed amount of money. It is payable at a definite time, and it does not state any other undertaking.

Having concluded that the note is a negotiable instrument, the UCC also addresses the transfer of and the rights to the enforcement of the note. Section 403.301, Wis. Stat., states:

> "Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument under s. 403.309 or 403.418(4). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

The holder of a negotiable instrument is the person "in possession of [such an] instrument that is payable either to bearer or to an identified person." Wis. Stat. § 401.201(2)(km)(1). Under Wis. Stat. § 403.109(3), an instrument payable to an identified person becomes payable to the bearer if it is endorsed in blank under Wis. Stat. § 403.205(2).

The state court made a specific finding that Old National was the successor-by-merger to AnchorBank and so was the secured party entitled to enforce the mortgage. Further, that Old National was "the holder of and party entitled to enforce the Note."[12] It found the material allegations of the complaint were true. As the holder of the note, it was entitled to foreclose. The Cernys appeared in the state court. They made arguments. The state court did not reach a decision until after the summary judgment process and the opportunity to appear and be heard was exercised by the Cernys.

---

[12] ECF No. 6, Exh. 2 at 30 of 77, ¶ 9.

The Complaint in this case is filled with sketchy, conclusory, and implausible allegations framed as conclusory legal statements. When, as is particularly the matter here, there are specific findings by the state court, the Court should not accept as adequate abstract recitations of the elements of a cause of action, conclusory legal statements, or claims without facts in support.

And, as noted above, the Cernys did participate in the state court proceedings. On a number of occasions they reconfirmed the existence of a debt by entering into a loan modification and an agreement with Old National. The release of personal liability—the personal obligation to pay the note— through the prior bankruptcy discharge did not release the mortgage or the right to payment of the note through a foreclosure sale (or redemption payment).

For these reasons, the Complaint must also be dismissed under Fed. R. Bankr. P. 7012(b), adopting Fed. R. Civ. P. 12(b)(6).

IV.   <u>Judge Jeffrey S. Kuglitsch is Immune From Liability in Both His Official and Personal Capacities.</u>

Even if this Court had jurisdiction to hear the claims, Judge Kluglitsch is immune from liability in both his official and personal capacities. If the Cernys intend to sue Judge Kuglitsch in his official capacity, he's protected by the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity, which "bars actions in federal court against . . . state officials acting in their official capacities." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520 (7th Cir. 2021) (citation omitted). "Under the doctrine,

[state officials] are immune from suit in federal court by private litigants unless
(1) the state unequivocally waives sovereign immunity, (2) Congress
unequivocally abrogates the state's immunity through its enforcement powers
under the Fourteenth Amendment, or (3) the suit seeks prospective relief
against a state official for an ongoing violation of federal law." *Avitia v. City of
Chicago*, No. 23CV15957, 2024 U.S. Dist. LEXIS 90067, at *5 (N.D. Ill. May 20,
2024) (citing *Kroll v. Bd. of Trustees of Univ. of Ill.,* 934 F.2d 904, 907–08 (7th
Cir. 1991)).

   None of the exceptions to sovereign immunity apply here. The state has
not consented to suit, there hasn't been a congressional abrogation of Judge
Kuglitsch's immunity, and the Cernys seek only retrospective relief, not
prospective.

   To the extent the Cernys are suing Judge Kuglitsch in his personal
capacity, he is protected by the doctrine of judicial immunity. Judicial
immunity is the "general principle of the highest importance to the proper
administration of justice that a judicial officer, in exercising the authority
vested in him, [should] be free to act upon his own convictions, without
apprehension of personal consequences to himself." *Stump v. Sparkman*, 435
U.S. 349, 355 (1978) (alteration in original; citation omitted). Therefore, judges
have "absolute immunity from . . . damages claims" from complaints "about
their judicial conduct." *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006).
The Cernys' allegations about Judge Kuglitsch focus entirely on his judicial

conduct, so he is immune to any suit against him in his personal capacity for that conduct.

V.    <u>The Claims Against Eckberg Lammers P.C. Must Be Dismissed.</u>

Finally, it appears that the Cernys included Eckberg Lammers as a defendant because the law firm appeared in the state court foreclosure, moved for summary judgment, and was able to obtain an order of foreclosure. This somehow leads the Cernys to the conclusion that if they are correct and there should not have been an order of foreclosure, then by representing a client the law firm must somehow have violated a statute or a constitutional right of the Cernys. As explained, *Rooker-Feldman* bars this Court from reviewing any claims related to the state court foreclosure judgment. If the Cernys are claiming that Eckberg Lammers committed fraud by initiating the foreclosure, then that claim must be dismissed because the state court found the foreclosure complaint was proper.

Next, the only statute cited by the Cernys that *might* be the basis for the claim they assert is 18 U.S.C. § 242; but that statute is inapplicable. Title 18 is the federal criminal code, and only the United States as a prosecutor can bring lawsuits under 18 U.S.C. §§ 241–42. *Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir. 1989); *Marshall v. Elgin Police Dep't,* No. 22-3159, 2023 U.S. App. LEXIS 15447, at *4 (7th Cir. June 21, 2023). Second, even the civil parallel to that section, which is 42 U.S.C. § 1983, fails to help the Cernys.

Section 1983 prohibits state officials, municipalities and local government entities, and private entities performing public functions acting

24

under "color of law," to deprive a person of a right or privilege protected by the
Constitution or federal law. *Wilson v. Warren Cnty.*, 830 F.3d 464, 468 (7th Cir.
2016). "For a private actor to act under color of state law he must have 'had a
"meeting of the minds" and thus reached an understanding' with a state actor
to deny plaintiffs a constitutional right." *Id.* (citing *Adickes v. S. H. Kress & Co.*,
398 U.S. 144 (1970)). In other words, a private citizen or entity cannot engage
in a state action and conspire with the government to infringe the right of
another.

There is no evidence of any such actions by the law firm. Instead, it
simply took the customary steps to pursue a foreclosure action on behalf of a
client. It prepared and filed a complaint. It reviewed the answer and response
that the Cernys filed in that action. It considered the agreement between the
Cernys and Old National Bank. Then it moved for summary judgment
presenting facts it believed supported the right of Old National to a judgment of
foreclosure. It then waited for the state court to review any response filed by
the Plaintiffs and a decision by the state court.

None of this supports a claim against Eckberg and Lammers, P.C. So the
motion to dismiss filed by the law firm must be granted under Federal Rule
12(b)(6).

### CONCLUSION

Plaintiffs' Complaint is premised on allegations that were previously
disposed of by a state court. The *Rooker-Feldman* doctrine deprives this Court
of subject-matter jurisdiction to review state court judgments. Thus, Plaintiffs'

Complaint must be dismissed. But further, even if this Court had jurisdiction,

Judge Kuglitsch is immune from Plaintiffs' claims because they are targeted at

his judicial conduct.

This decision constitutes findings of fact and conclusions of law under

Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Dated: March 21, 2025.

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge